UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHABBIR CHOUDHURY,

          Plaintiff,

          -against-

J.P. MORGAN CHASE BANK, N.A.,
d/b/a CHASE BANK

          Defendant,

_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)**

**Docket No**.: 17cv3740
Jury Trial Demanded:  Yes

## PARTIES IN THE COMPLAINT

      Shabbir Choudhury (know hereinafter as "Plaintiff") by and through his attorney Subhan Tariq, Esq. as and for his complaint against J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank (known hereinafter as "Defendant") respectfully sets forth and alleges the following on information and belief, the following:

1.     Plaintiff Shabbir Choudhury (hereinafter "Plaintiff") is a natural person who resides at 8828 202nd Street, Hollis, NY 11423.

2.     Plaintiff is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

3.     Defendant J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank is a national bank currently headquartered in Ohio at 1111 Polaris Parkway, Columbus, OH 43240.

4.     Defendant persistently utilized an "Automatic Telephone Dialer", as defined in 47 U.S.C. § 227(a)(1), to call the Plaintiff's cellular telephone, violating the Plaintiff's privacy rights afforded under federal law.

1

## JURISDICTION

5.   Jurisdiction of this Court arises under 28 U.S.C. § 1331, 47 U.S.C. § 227, and pursuant to 28 U.S.C. § 1367 for pendent state law claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action. Injunctive relief is available pursuant to the TCPA.

6.   This action arises out of the Defendant's repeated violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.,* in their efforts to collect an alleged consumer debt.

7.   Venue is proper in this District because the Plaintiff may be found in this District, and some of the acts and transactions occurred in this District, and because Plaintiff received multiple collection communications from and on behalf of the Defendant while in New York on the cellular telephone that is the subject of this litigation.

## FACTUAL ALLEGATIONS

8.   Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs number ("1 through 7") herein with the same force and effect as if the same were set forth at length herein.

9.   Plaintiff asked that he not be called by automated dialers, but these calls did not cease.

10.   On December 19, 2016, Defendant began communicating with Plaintiff by means of telephone calls to Plaintiff's cellphone numbers (347) 417-3793 and (929) 386-7635.

11.   Plaintiff, after having received numerous calls from the Defendant, spoke with an agent of the Defendant and requested that the Defendant cease making "robo-calls" to his cellphone numbers (347) 417-3793 and (929) 386-7635.

12.   On December 27, 2016, the Plaintiff spoke with the Defendant's agent.

13.     Defendant's agent stated: "I do see that we were calling as a courtesy today on your JCE Wireless Incorporated account ending in six-two-one-six that did charge off…I mean, that has been overdrawn for twenty-two days with an overdrawn amount of five-hundred and seventy-eight dollars and seven cents and we were calling to see if you could make a deposit for that balance in full today."

14.     Plaintiff stated: "Yeah, I mean I'm going to make a deposit to clear everything out. You know, I just didn't have a chance. I was at work for like, last like, I work two three weeks now. I just came back. What I'm going to do, I'm going to make a deposit, but in the meantime, you guys don't even have to call me, or remind me, or anything like that. You don't have to call me with robo-calls, or any further calls."

15.     Defendant's agent stated: "Ok, to be able to stop any future calls we would need to know the exact date that you would be depositing the five hundred and seventy-eight dollars and…"

16.     Plaintiff stated: "Well, I don't know that date. I just got back, so I'm going to try to work something out between, you know, within this week or something."

17.     Defendant's agent stated: "Ok, so when do you think the latest it would be that you would be able to make that deposit?"

18.     Plaintiff stated: "The latest I would be making the deposit, maybe by sometime this week. Maybe by tomorrow or so."

19.     Defendant's agent stated: "Ok, but definitely by Friday the thirtieth you would be able to make a deposit for five-hundred…"

20.     Plaintiff stated: "Yeah, hopefully by Friday, or you know by tomorrow or so I'm going to be able to make the deposit. In the meantime, you guys don't have to call me, or remind

me, or anything like that. I don't need the robo-call, because I'm really busy, I don't want to be getting any calls."

21.     Defendant's agent stated: "Ok, but you definitely would be able to deposit the full balance by Friday the thirtieth at the branch?"

22.     Plaintiff stated: "Yeah, sure."

23.     The call ended shortly after.

24.     Despite these requests on the part of the Plaintiff, the Defendant continued to make harassing autodialed calls to his cell phone at all hours of the day causing great stress and hardship to the Plaintiff and his family.

25.     After this phone call on December 27, 2016, the Defendant called the Plaintiff one-hundred and fifty-nine (159) more times at his cellphone numbers (347) 417-3793 and (929) 386-7635.

26.     On January 30, 2017, the Plaintiff twice answered phone calls from the Defendant.

27.     Each time he picked up the phone he stated "Hello?" and no one picked up.

28.     On February 14, 2017, the Plaintiff answered a phone call from the Defendant.

29.     The Plaintiff stated "Hello? Hello?" and suddenly one of the Defendant's agents answered.

30.     On March 21, 2017, the Plaintiff answered a phone call from the Defendant.

31.     The Plaintiff stated "Hello? Hello?" and suddenly one of the Defendant's agents answered.

32.     On March 28, 2017, the Plaintiff once again spoke with the Defendant's agent.

33.     Plaintiff stated: "But also, like, I'm receiving a lot of calls and they're calling me and I understand I have to pay you guys, but you guys are calling me, sometimes like when I pick up the phone and I say, 'Hello. Hello. Hello.' and nobody talks and then I have to be,

you know, waiting and things like that. Uh, you know. So, if you guys can stop calling me, that would be like, you know, good. Like robocalls or anything like that."

34.    Defendant's agent stated: "We can actually stop the phone call if we set up a payment arrangement on your account. We will actually just need the specific or latest date that you can take care of the full balance so that we will just wait for that day."

35.    Plaintiff stated: "Ok. If you can send me an e-mail to my e-mail address…and let me know what's my balance and everything and I'll give you guys a call back and make a payment. I can do that maybe by later today or something."

36.    Defendant's agent stated: "Um. However, we cannot send you an e-mail. We can send it through mail. Um. That would show…a letter that would show the charge of balance on the account. Though it may take 7-10 business days from now for you to receive it."

37.    Plaintiff stated: "Ok."

38.    Defendant's agent stated: "Once you receive it, the earliest you can take care of this whole balance either at the branch or check-by-phone…"

39.    Plaintiff stated: "Yeah, I'm going to go to a branch and take care of it, but not robo-calls…"

40.    Defendant's agent stated: "Ok."

41.    Plaintiff stated: "…because you know, I'm getting a lot of calls."

42.    The call ended shortly after.

43.    On April 22, 2017, the Plaintiff answered a phone call from the Defendant.

44.    The Plaintiff stated "Hello? Hello? Hello?" and suddenly one of the Defendant's agents answered.

45.    On May 2, 2017, the Plaintiff answered a phone call from the Defendant.

46.    The Plaintiff stated "Hello? Hello?" and suddenly one of the Defendant's agents answered.

47.     On May 6, 2017, the Plaintiff answered a phone call from the Defendant.

48.     The Plaintiff stated "Hello?" and no one answered.

49.     On May 8, 2017, the Plaintiff answered a phone call from the Defendant.

50.     The Plaintiff stated "Hello? Hello? Hello?" and suddenly one of the Defendant's agents answered.

51.     On May 9, 2017, the Plaintiff answered a phone call from the Defendant.

52.     The Plaintiff stated "Hello? Hello?" and suddenly one of the Defendant's agents answered.

53.     On May 12, 2017, the Plaintiff answered a phone call from the Defendant.

54.     The Plaintiff stated "Hello? Hello? Hello?" and suddenly one of the Defendant's agents answered.

55.     On May 15, 2017, the Plaintiff answered a phone call from the Defendant.

56.     The Plaintiff stated "Hello?" and no one answered.

57.     On May 23, 2017, the Plaintiff answered a phone call from the Defendant.

58.     The Plaintiff stated "Hello? Hello? Hello?" and suddenly one of the Defendant's agents answered.

59.     On May 24, 2017, the Plaintiff answered a phone call from the Defendant.

60.     The Plaintiff stated "Hello?" and no one answered.

61.     On May 27, 2017, the Plaintiff once again spoke with the Defendant's agent.

62.     Defendant's agent stated: "I'd like to know if you can do…mm-hmm."

63.     Plaintiff stated: "That means that right now man, currently I'm having some financial problems. I just closed down the business. I'm already doing good financially, so I'm going to take care of it as soon as I get a little chance. I've been receiving a lot of robocalls from

you guys. You guys are calling me all the time and I don't know what to do. If you guys can stop calling me, the robocalls, that would be great."

64. Defendant's agent stated: "Are you requesting for…um…to stop calling this number?"

65. Plaintiff stated: "Yeah, I requested before to stop calling me the robocalls."

66. Defendant's agent stated: "The reason why we keep calling you is because there is no payment arrangement on this account. That is why the only way we can stop the call is for us to schedule a payment arrangement in the near…maybe the next 30 days so we can stop the collection call. We can actually do split payments, so you don't need to pay off the balance one time. We can do split payments."

67. Plaintiff stated: "I'm going to give you guys a call back whenever I'm ready to do it, but now…"

68. Defendant's agent: "Not a problem. I certainly understand that one. Just give us a call back then once you have funds available."

69. Plaintiff stated: "Thank you."

70. Defendant's agent stated: "You're welcome. But, please expect the collection call will still continue moving forward, ok?"

71. Plaintiff stated: "That's not good man."

72. Defendant's agent stated: "Thank you for being a part of Chase then, Shabbir. You have a wonderful weekend. Goodbye."

73. The call ended shortly after.

74. On June 11, 2017, the Plaintiff once again spoke with the Defendant's agent.

75. Plaintiff stated: "Yes, I'm actually calling because you guys are calling me. I told them last time that you know, right now I'm not in a good financial space. I cannot really get that

amount. But I told them to stop calling me with the robocalls but they keep calling me with the robocalls. Is there any way you guys can stop calling me with these robocalls?"

76. Defendant's agent: "And I'm sorry, you said what was the issue regarding the account status?"

77. Plaintiff stated: "I told you that I want to take care of it. But right now, I'm not in a good financial state and all. And I also asked them to stop calling me with these robocalls. They're always calling with robocalls, sometimes I pick up and you know, nobody's on the line, line is getting cut off. It's kind of annoying me and they're calling on my cellphone."

78. Defendant's agent stated: "Oh ok, I'm sorry. And you're a little low. What were you trying to get accomplished?"

79. Plaintiff stated: "I'm not trying to get anything accomplished. What I'm trying to say is like, you know, I asked you guys last time to stop calling me on my phone with these robocalls. But they keep calling me on my phone with these robocalls. And I also told them that I cannot make a payment because I'm not in a good financial state right now."

80. Defendant's agent stated: "Ok. I'll have to place it under a cease and desist. However, that will stop any department from Chase from contacting you no matter what's going on with your account, you'll have to find out the information on your own."

81. The call ended shortly after.

82. Despite Plaintiff revoking consent, the Defendant and its agents continued to repeatedly use an automatic telephone dialing system to call Plaintiff's cellphone in an attempt to collect this alleged debt, at least one-hundred and sixty-one (161) times prior to the commencement of this litigation (See Exhibit A Call Logs).

83. When the Plaintiff was able to speak with an agent of the Defendant, they would routinely refuse to acknowledge the Plaintiff's request to not receive "robo-calls."

84. The Defendant voluntarily and willfully used an auto dialer to place these calls.

85. At no time did the Plaintiff ever give consent for the Defendant to use an auto dialer to place these calls.

## TELEPHONE CONSUMER PROTECTION ACT

86. Plaintiff repeats, reiterates, and incorporates the allegations contained in the paragraphs number ("1 through 85") herein with the same force and effect as if the same were set forth at length herein.

87. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

88. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

89. Under the TCPA, the burden is on defendants to demonstrate prior express consent.

90. At all times relevant to this complaint, the Plaintiff was and is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

91. At all times relevant to this complaint, the Defendants have used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

92.     The Federal Communications Commission (FCC) was given the authority to issue orders implementing the TCPA. The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. **Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.**

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted, bold emphasis added.)

93.     The Second Circuit's more recent decision in *Giovanniello v. ALM Media*, LLC, 726 F.3d 107 (2d Cir. 2013), recognized that prior interpretation of §227(b)(3) as giving state courts the authority to set the terms of TCPA claims no longer held true.  Based on those precedents, the court held that Federal Rule of Civil Procedure 23, not state law, governs when a federal TCPA suit may proceed as a class action.  The Second Circuit noted that Mims triggered a fundamental shift in the way that the court views Section 227(b)(3)'s "if otherwise permitted" language, and "uprooted much of our TCPA jurisprudence." Ultimately, the court found that Federal Rule of Civil Procedure 23 now governs TCPA class actions in Federal Courts.

94.     Within the months immediately preceding the filing of this lawsuit, Defendant and its agents telephoned the Plaintiff's cellular telephone number on numerous occasions in violation of the TCPA.

95.     Without Plaintiff's prior express consent, Defendant and its collectors and agents repeatedly used an automatic telephone dialing system to call Plaintiff's cellular telephone

in an attempt to collect this alleged debt, at least one-hundred and sixty-one (161) times prior to the commencement of this litigation.

96.   Oftentimes these phone calls would simply be an automatic message requesting that the Plaintiff call the Defendant.

97.   Plaintiff also asked the Defendant numerous times not to call him at his cellular phone number.

98.   When the Plaintiff was able to speak to the Defendant's agent, he would request that no "robo-calls" be made to his cell phone number.

99.   Despite these requests to not receive "robo-calls" at his cell phone number, neither the "autodialed" calls nor their frequency abated.

100.   The frequency of these calls also greatly impacted the Plaintiff's home and work life as well.

101.   Plaintiff also began to suffer from extreme stress and physical hardship as a result of the frequency of the calls, his inability to deal with the Defendant in any constructive way.

102.   These hardships, caused by the Defendant, directly harmed the Plaintiff's ability to work and earn money, deal with his family, and otherwise lead a healthy and productive life.

103.   Throughout this time the Defendant was on specific notice that the phone was a cell phone and that the Plaintiff was specifically requesting that they not call him at that number, making these automated calls to Plaintiff willful.

104.   All calls and messages were sent in willful violation of the TCPA because Defendant never obtained the Plaintiff's prior express consent, and had no basis to believe that they had the Plaintiff's prior express consent to make automated calls to his cell phone or to send him prerecorded and/or synthesized messages on his cell phone.

*Summary*

105.   All of the above-described collection communications made to Plaintiff by Defendants and other collection employees employed by Defendant, were an invasion of his privacy by the use of repeated calls.

106.   According to findings by the FCC, automated calls are prohibited because, as Congress found, such calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

107.   The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago*, 394 U.S. 111, 125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471(1980).

108.   The Defendant's persistent autodialed calls eliminated the Plaintiff's right to be left alone.

109.   These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had.

110.   Defendant's actions constituted the unauthorized use of, and interference with the Plaintiff's cellular telephone service for number which the Plaintiff paid money.

111.   Plaintiff was charged money for each call that Defendant made to Plaintiff's cellular phone.

## **TCPA AUTODIALERS**

112.   The TCPA further provides that "[t]he term 'automatic telephone dialing system' means equipment which has the capacity – (A) to store or produce telephone numbers to be called,

using a random or sequential number generator; and (B) to dial such numbers." (47 U.S.C. § 227(a)(1)).

113.    The FCC has interpreted an autodialing telephone dialing system as follows:

Under the TCPA, the term "automatic telephone dialing system" or "autodialer" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." . . . § 227(a)(1). *The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists.* See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (2003 TCPA Order). The Commission has, for example, concluded that the scope of that definition encompasses "hardware [that], when paired with certain software, *has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers*," in light of, among other things, its conclusion that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." Id. at 14091-93, paras. 131, 133.

*Soundbite TCPA Ruling*, 15 FCC Rcd. 15391 at ¶ 2, n.5 (emphasis added.)

### CAUSE OF ACTION
### FIRST COUNT
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

114.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

115.    The foregoing acts and omissions of J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

116.    As a result of J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to treble damages of up to $1,500 for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

117.    Plaintiff is also entitled to and does seek injunctive relief prohibiting such conduct violating the TCPA by J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank in the future.

118.    Plaintiff is also entitled to an award of attorneys' fees and costs.

## SECOND COUNT
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

119.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

120.    The foregoing acts and omissions of J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

121.    As a result of J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

122.    Plaintiff is also entitled to and does seek injunctive relief prohibiting J.P. Morgan Chase Bank, N.A., d/b/a Chase Bank's violations of the TCPA in the future.

123.    Plaintiff is also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (b)(1)(a), respectfully requests that the Court:

1. Award statutory damages of $500.00 for each and every violation of the TCPA by the Defendant;

2. Find that the Defendant willfully or knowingly violated the TCPA and increase the statutory damages against the Defendant to $1,500.00 for each and every violation of the TCPA;

3. Enter a judgment in favor of the Plaintiff against Defendant for an amount of damages to be proved at trial;

4. Enjoin the Defendant from further contacting the Plaintiff in violation of the TCPA;

5. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated:  June 21, 2017

Respectfully submitted,

__ s/Subhan Tariq_____
Subhan Tariq, Esq.
Attorney I.D. No. ST9597
The Tariq Law Firm, PLLC
9052 171st Street
Jamaica Estates, NY 11432
Telephone: (516) 900-4529
Facsimile: (516) 453-0490
Email: subhan@tariqlaw.com
**Attorney for Plaintiff**

To:
    J.P. Morgan Chase Bank, N.A.,
    d/b/a Chase Bank
    1111 Polaris Parkway
    Columbus, OH 43240

15

(via Prescribed service)

Clerk of the Court,
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

(For Filing purposes)